# BANCO POPULAR Complainant,

*v.*

# E. B. WILCOX, Dft.

San Juan, Equity, No. 946.

RE DEFICIENCY JUDGMENT AFTER MORTGAGE SALE.

**Decree Pro Confesso—Parties—Due Process of Law.**

1. A decree taken pro confesso against a party to a suit cannot affect one not a party to the suit and against whom it was not taken as at common law, and under the 14th Amendment every person is entitled to due process of law, and is not bound by any proceeding to which he is not a party.

**Foreclosure of Mortgage—Procedure.**

2. In addition to the mortgage procedure, a mortgage may be foreclosed in Porto Rico by the proceeding established by the Law of March 9, 1905, analogous to other judicial proceedings or by a foreclosure in equity.

**Mortgage—Third Party—Mortgage Law—Civil Code.**

3. A mortgage is primarily a security, and a third party, as purchaser, while liable for the obligation to the extent of the mortgaged property, is not liable further. Where the Civil Code conflicts with the Mortgage Law the Code prevails.

**Mortgage—Third Party—Express Liability—Novation—Equity.**

4. While a third party, as a purchaser, is ordinarily liable only to the extent of the mortgaged property, this is not so where he expressly obligates himself further. An original mortgage debtor may be substituted by another, with the consent of the mortgagee, and this must be done by an instrument of equal dignity with the mortgage, but where this is not done but the parties act as if it had been done, equity will consider it as having been done.

**Mortgage—Foreclosure—Deficiency Decree.**

5. Under the general power of a court of equity to mold its procedure to meet the justice of the case, there may be a decree of

foreclosure, and if the sale does not produce an amount sufficient to cover the debt there may be a subsequent decree for the deficiency.

Opinion filed April 27, 1917.

*Messrs. Damián Monserrat* and *Frank Antonsanti* for plaintiff.

*Messrs. J. R. F. Savage* and *Chas. Hartzell* for defendant.

HAMILTON, Judge, delivered the following opinion:

This case has been severely litigated, and, after final decree of sale of the mortgaged property and confirmation of the report of sale, now comes up upon the motion of the plaintiff for a judgment over against defendant Wilcox for the difference between the proceeds of sale and the judgment debt as heretofore ascertained. The defendant denies that a deficiency judgment can be had against him.

1. The mortgage was originally made by Landron to the plaintiff bank, and defendant Wilcox comes into the matter through his purchase from Landron and the agreement whereby he, as purchaser, "binds himself to the payment of principal and interest secured by said mortgages, as well as binds himself for the fulfilment of all the principal and accessory obligations." It is contended on his behalf, that, as he obtained a decree pro confesso in a suit against Landron alone whereby this conveyance was avoided, he is released also so far as the bank is concerned. It has already been determined, however, in this case that no matter what the wording of the decree pro confesso as

between him and Landron, the bank is not affected. If he and Landron had personally agreed to anything, it could not affect the bank, provided of course that the bank had acquired rights in the meantime. At common law and under the 14th Amendment every person is entitled to due process of law, and is not bound by any proceeding to which he is not a party.

2. It is claimed that the mortgage obligation is, for the purposes of this case, to be regarded as solely between Landron and the bank. Under Civil Code, § 1758, it is declared as the first essential requisite of a contract of mortgage that it is constituted to secure the fulfilment of a principal obligation, that is to say, that the mortgage is itself accessory. To this effect is Manresa Comentario, vol. 12, p. 382. There is no doubt that this is true and remained true so long as the parties to the transaction were Landron and the bank.

The Mortgage Law is older than the Civil Code, having been adopted in 1863 for peninsular Spain, and after modifications extended to Porto Rico in 1893. Its object was to provide a system of registration of titles and to protect third parties against claims which have not been registered in accordance with its terms. Under the Mortgage Law, articles 127–129, the theory was that if there was no bidder at the public mortgage sale the mortgagee could demand that the property be awarded to him. To this end a prior appraisement was made, and a summary judicial proceeding provided, from which there could be no redemption. Another form of proceeding has been created in Porto Rico by the Law of March 9, 1905, tending towards making the proceeding analogous to other judicial proceedings. Compilation of 1911, p. 859, Montes de Oca v. Baez, 23 P. R. R.

656. To this must also be added, as formally different at least, a foreclosure in equity, as in the case at bar.

3. Prior to the Civil Code and the Mortgage Law, the mortgagee must, in case of alienation of the property, exhaust his remedy against the original debtor before he could follow the property into the hands of a third party. Manresa supra, 517. This did not seem to create any liability on the part of the purchaser under any circumstances beyond the value of the mortgaged property itself. The Mortgage Law gives special rights to a purchaser. While the mortgagor under article 115 may compel the debtor to capitalize unpaid interest for three years and increase the mortgage to that extent, article 116 provides that, if the property has changed hands, the mortgage creditor cannot demand from this third party this addition to the obligation. He is relegated to other lands of the mortgagor. Similarly under articles 112 and 113 the purchaser has greater rights in the way of removal or remuneration for his machinery and improvements than is given to the mortgagor himself. It is true that under articles 147 and 148 a creditor can claim back interest, but it is only for two years instead of the three which could have been claimed against the mortgagor himself.

The theory of the Spanish Civil Law, therefore, not only is that a mortgage is primarily a security, but that third persons, such as purchasers, while liable for the obligation to the extent of the mortgaged property, are not liable further. Where the Civil Code conflicts with the Mortgage Law the Code prevails. Civil Code, § 1781: "The form, extension, and effects of the mortgage, as well as all that relating to its creation, modification, and extinction, and all that which may not have been included

in this chapter, shall be subject to the provisions of the mortgage law, which continues in force."

As to purchaser of mortgaged property, § 1780 of the Civil Code provides as follows: "A creditor may demand from the third possessor of the property mortgaged the payment of the part of the credit secured with what the latter may possess, in the terms and with the formalities established by law."

This also should be construed as limiting the liability of the purchaser to the property in his hands under mortgage, and does not in itself render him liable for the debt beyond the value of the property so possessed. So far as relates to the liability of a purchaser of mortgaged property, the Act of March 9, 1905, makes no difference in the law. It somewhat changes the method of collection of the mortgaged debt, but makes no change so far as relates to the liability of a third person in possession.

4. In the case at bar, however, a different situation is presented, due to the fact that the defendant has made an express agreement to put himself in the place of the original mortgagor by binding himself to the payment of principal and interest and to the fulfilment of the principal and accessory obligations. This was the agreement between Landron and Wilcox, and to it the bank was not a party. It is doubtless true that a third person cannot substitute himself in the place of the original debtor without the consent of the creditor, and that there cannot be two such principal debtors at the same time under the Spanish law. Under the Civil Code, § 1124, obligations are extinguished, amongst other things, by novation, and under § 1171 an obligation may be modified by substitution of a new debtor. This cannot be done without the consent of the original creditor according to the terms of § 1173, which is as follows: "Nova-

tion, consisting in the substitution of a debtor in the place of the original, may be made without the knowledge of the latter, but not without the consent of the creditor."

The original creditor, however, the bank, has sued defendant Wilcox for the debt, and has not pursued Landron in this respect. While it was not a party to the Wilcox-Landron arrangement, it has accepted the substitution, received interest from defendant Wilcox, given him extension of time, and by this suit looks to him alone for payment of the obligation. If it is possible to accept a substitution of debtors, it would seem that the plaintiff has done so. It is doubtless true that at law, under Civil Code, § 1247, consent to a change of an old contract must appear in a document of equal dignity with the old one.

Sec. 1247. The following must appear in a public instrument: "1. Acts and contracts the object of which is the creation, transmission, modification, or extinction of property rights on real property. . . . 6. The assignment of actions or rights arising from an act contained in a public instrument."

If this be a defect it would be one which could, after defendant Wilcox had received extension of time from the bank, be cured by a proceeding to compel him to execute the proper obligation to the bank. It would be inequitable for this defendant to be permitted to set up such a defect under the circumstances. There must therefore, for the purposes of this case, be held to be a novation by which Wilcox was substituted, instead of Landron, as to payment of principal and other obligations created by the original Landron mortgage.

5. It is argued that the decree foreclosing the mortgage must be complete in itself, and must require that a deficiency be entered against the defendant. Section 1 of the Act of March

9, 1905, requires that the judgment of foreclosure shall be that the plaintiff recover the debt, with foreclosure of the lien, and that an order of sale shall issue, and if the proceeds of such sale be insufficient to satisfy the judgment then that the balance shall be satisfied out of any other property of the defendant. The defendant under article 129 of the Mortgage Law would, in a case similar to the one at bar, be a third party, the party in possession. It is not clear from the reading of the law that the matter of execution for deficiency must be embraced in the original judgment. In the California case of Leviston v. Swan, 33 Cal. 480, 482, it was held that all the judgment need contain is a statement of the amount due the plaintiff, that the defendants were personally liable, and directing that the mortgaged property be sold and the proceeds applied to the debt and expenses. Everything else being regulated by statute, the provisions of the statute control without being copied into the judgment. Moreover, proceedings in equity are regulated by their own rules. Under new equity rule No. 10, prescribed by the Supreme Court, it is said: "In suits for the foreclosure of mortgages, or the enforcement of other liens, a decree may be rendered for any balance that may be found due to the plaintiff over and above the proceeds of the sale or sales, and execution may issue for the collection of the same." [226 U. S. 652, 57 L. ed. 1636, 33 Sup. Ct. Rep. XXI.] Judgment may be entered for such deficiency under the prayer for general relief. Seattle, L. S. & E. R. Co. v. Union Trust Co. 24 C. C. A. 512, 48 U. S. App. 255, 79 Fed. 179, 188. It is not required that this be a clause in the original decree, for it cannot at that time be certain that the property will not produce the amount of the debt. It is useless to provide for a deficiency when it is not at

Banco Popular v. Wilcox.

all clear that there will be a deficiency. Under the general power of a court of equity to mold its procedure to meet the justice of the case, there may be a decree of foreclosure, and after the sale is found not to produce the whole amount of the debt there may be a subsequent decree for the deficiency. The decree should state the amount due, and it would be impossible to state the amount of the deficiency until the subsequent proceedings have ascertained the deficiency. This, indeed, is taken as a ground for claiming that, because of a proposed appeal which may lead to a new sale, there can now be no such ascertainment. This court cannot, however, take an appeal into account. There certainly can be no presumption of reversal. The only thing before the court is its own decree, and the proceedings upon that show a deficiency.

There does not appear any reason why deficiency judgment should not be entered under the facts of the case. It is true that ordinarily a purchaser would not be liable for the amount of the debt above the value of the property, but in the case at bar the defendant expressly assumed such liability. If the rents had been applied to the debt as they accrued, it may well be that there would now be no deficiency. If the defendant preferred to use the rents as they accrued, the result would be that the debt was not reduced and that the amount now is correspondingly larger.

It follows that the deficiency decree must be entered as prayed. It is so ordered.